## **Third Forbearance Agreement**

This Third Forbearance Agreement ("TFA") is made and dated effective as of February 10, 2021 by and between Microwave Industrial Services, LLC ("Borrower"), Kevin Sustala ("Guarantor") and Vita Victor, Inc. ("Grantor") on the one hand (Borrower and Guarantor are cumulatively referred to as the "Obligors"), and Hancock Whitney Bank ("Lender") on the other hand. Obligors and Grantor and Lender are hereinafter sometimes collectively referred to as the "Parties."

A.     WHEREAS, for good and valuable consideration, Borrower executed and delivered to Lender that certain Promissory Note dated October 1, 2020 (the "Note") payable to Lender in the principal amount of $220,000.00 in relation to Loan No. 00044201327042; and

B.     WHEREAS, the Parties entered into that certain Forbearance Agreement effective February 26, 2021, pursuant to which the maturity date of the Note was extended to July 31, 2021; and

C.     WHEREAS, for good and valuable consideration, Borrower executed and delivered to Lender that certain Promissory Note dated July 2, 2019 (the "Note2") payable to Lender in the principal amount of $280,000.00 in relation to Loan No. 00033101327515; and

D.     WHEREAS, because of various defaults of the Note2, HWB chose to exercise its right to accelerate all amounts due under the Note2 and gave notice of such acceleration to the Obligors via letter dated August 18, 2021; and

E.     WHEREAS, Guarantor has executed a Commercial Guaranty by which he has "absolutely and unconditionally guarantee[d] full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents" ("Indebtedness" as defined by the Commercial Guaranty includes all amounts owed pursuant to the Note and the Note2, which cumulatively are referred to hereinafter as the "Notes"); and

F.     WHEREAS, the Parties entered into that certain Forbearance Agreement dated

effective as of November 1, 2021, pursuant to which the Obligors agreed to pay off the Notes in full by January 31, 2022, and Lender agreed to forbear from exercising its rights and remedies as a result of Obligors' breaches of their contractual obligations; and

G.      WHEREAS, Obligors have failed to pay off the Notes as they agreed to do; and

H.      WHEREAS, Obligors and Grantor desire that Lender not immediately invoke its full legal rights, including but not limited to filing suit against Obligors; and

I.      WHEREAS, Borrower previously executed a Commercial Security Agreement dated July 1, 2019 to secure its obligations owing to Lender; and

J.      WHEREAS, Borrower has indicated its ability and willingness to grant additional security to secure the indebtedness owed under the Notes to Lender by the pledging by Grantor of certain EIDL loan proceeds expected to be received by Grantor in the next 30 to 45 days  (the "Proceeds"), as well as the pledging of Grantor's deposit accounts; and

K.      WHEREAS, Borrower has indicated that it is wholly owned by Grantor, and that Grantor is wholly owned by Guarantor; and

L.      WHEREAS, Lender is willing to forbear from immediately exercising its rights in consideration of Obligors' and Grantor's promises made herein and the performance of said promises in full; and

M.      WHEREAS, the outstanding principal balance of the Note as of February 10, 2022 was $215,014.35; and

N.      WHEREAS, the outstanding principal balance of the Note2 as of February 10, 2022 was $209,624.01; and

O.      WHEREAS, through February 10, 2022, late charges in the amount of $2.99 had accrued on the Notes; and

P.      WHERAS, Borrower's defaults under the Notes and Forbearance Agreements have resulted in Lender incurring continuing collection costs which as of February 1, 2022 totaled $5,920.29, said continuing collection costs being expressly payable by Obligors pursuant to the

terms of the Loan Documents[1]; and

Q.   WHEREAS, the Notes are also guaranteed by that certain Commercial Guaranty dated July 1, 2020 executed by Abe Levitz in favor of Lender.

NOW THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Obligors and Grantor and Lender hereby agree as follows:

1.   Payments Under the Forbearance.   Unless the Notes are sooner paid in full, then on or before March 10, 2022, Borrower agrees to pay to Lender all accrued, unpaid interest due on the Notes.   Unless the Notes are sooner paid in full, then on or before April 11, 2022, Borrower agrees to pay to Lender all accrued, unpaid interest due on the Notes.   Unless the Notes are sooner paid in full, then on or before May 10, 2022, Obligors agree to pay to Lender all amounts due under the Note and the Note2, including the entire unpaid principal balances, all accrued, unpaid interest, late charges (if any), costs of collection (including but not limited to legal costs incurred by Lender as a result of Borrower's breaches of the Loan Documents and/or of this TFA), and all other costs/amounts due under the terms of the Notes.

2.   Lender's Forbearance.   Provided that Borrower satisfies all of the conditions set forth in paragraph 1 above and that there is no other default by Obligors or Grantor under this TFA or further Event of Default under the Loan Documents, Lender hereby agrees to forbear until May 10, 2022 from exercising its contractual and other rights and remedies as a result of Borrower's current breaches of the Loan Documents.   Borrower understands and agrees that this forbearance by Lender pertains solely to Lender's rights and remedies as a result of Borrower's current defaults of the Loan Documents, and Borrower further understands and agrees that Lender's obligations under this TFA are in the nature of a conditional forbearance only, and that Lender has made no agreement or commitment to provide additional forbearance.   Borrower also acknowledges that the current payment default is not cured as a result of this TFA.

3.   Interest Rate during Forbearance.   Notwithstanding that the Note has matured by its

---

[1] The Note, the Note2, the Commercial Guaranties executed by Kevin Sustala and Abe Levitz, the February 26, 2021 Forbearance Agreement, the November 1, 2021 Forbearance Agreement, and the Commercial Security Agreement are cumulatively referred to as the "Loan Documents."

terms and that the Note2 has matured by the acceleration of the indebtedness, during the period of this TFA, if and only if there is no default of this TFA, starting February 10, 2022, the Notes shall bear interest at the rate of 8.0% per annum based on a year of 360 days.

4. <u>Granting of Additional Security by Grantor.</u>  For value given, the receipt of which is expressly agreed and acknowledged by Grantor, on or before the effective date of this TFA, as further consideration for Lender granting the additional forbearance contemplated by this TFA, Grantor will cause to be granted a perfected security interest in favor of Lender of: (a) the Proceeds, and (b) Grantor's deposit account #6842860709 maintained by Grantor at Wells Fargo Bank, NA (the "Proceeds Account").  Grantor and Guarantor warrant and represent that they have requested that the Proceeds be deposited (upon funding of the loan which will create the Proceeds) by the SBA directly into the Proceeds Account.  Attached hereto as Exhibit A is a form of the Security Agreement to be executed by Grantor in order to effect the intent of this paragraph 4. Attached hereto as Exhibit B in order to effect the intent of this paragraph 4 is a form of the Limited Deposit Account Control Agreement to be executed by Grantor, Lender, and Wells Fargo Bank, NA to perfect Lender's security interest in Grantor's Proceeds Account.

5. <u>Provision of Financial Records.</u>  Concurrently with the execution of this TFA, or as soon thereafter as such documents are filed with the IRS, Borrower will provide to Lender filed copies of its latest 2015-2020 federal tax returns, as well as its 2021 year-end balance sheet and income statement.

6. <u>Accuracy of Recitals.</u>  Borrower, Guarantor, and Grantor acknowledge that the recitals set forth above are accurate, true, and correct.  The Parties agree that the recitals are incorporated as part of the Parties' agreements.

7. <u>Reaffirmations.</u>  Except as may be expressly modified by this TFA, Borrower: (i) acknowledges the ongoing validity of the Loan Documents, and (ii) reaffirms all of its obligations under the Loan Documents.

8. <u>Borrower's and Guarantor's Representations.</u>  Obligors hereby represent and warrant that: (i) they have no claims, offsets, counterclaims, or defenses with respect to Obligors' obligations under the Notes and/or the Commercial Guaranty; (ii) Lender has not breached any duty to Obligors in connection with the Loan Documents or otherwise; (iii) Lender has fully performed any and all obligations it may have or have had to Borrower; (iv) all interest, fees, and

other charges computed, imposed, accrued, and/or collected by Lender under this TFA and/or the Loan Documents were and are reasonable, proper, appropriate, and agreed to by Obligors; and (v) other than the current payment defaults, the occurrence of property tax and federal IRS liens, and the failure to have provided "correct current financial statements," no further Event(s) of Default under the Loan Documents exists at the current time.

9. Obligors' Release. Obligors and Grantor hereby release Lender and its present and former officers, directors, shareholders, partners, employees, attorneys, and other agents, as well as Lender's predecessors, successors, assigns, parents, affiliates, and subsidiaries, from any and all past and present claims, demands, obligations, causes of action, rights, damages, costs, fees, expenses, losses, and compensation of any nature whatsoever, whether based on contract, tort, statute, or other legal or equitable theory of recovery, whether known or unknown, and whether accrued or unaccrued, arising from, or in any way related to one and/or more of the Loan Documents and/or the Obligors' indebtedness to Lender.

10. Default. The failure of Obligors and Grantor to comply with any provision(s) of this TFA or the failure of Borrower to comply with the terms and conditions of the Note and/or the Note2 (other than the current payment defaults) shall constitute an event of default and shall entitle Lender to immediately exercise any and all of its rights and remedies under the Loan Documents, the pledges herein made by Grantor, and/or otherwise at law or in equity. Should any further event of default occur of Obligors' or Grantor's obligations pursuant to the Loan Documents or this TFA, no notice of any kind will be required of Lender prior to Lender pursuing any and/or all of its rights and remedies.

11. No Waiver. No failure to exercise, and no delay in exercising any right or remedy under any of the Loan Documents, the Security Agreement, this TFA, and/or otherwise at law or in equity shall impair any right or remedy that Lender may have, nor shall such delay be construed to be a waiver of any of such rights or remedies. No waiver of any default or breach of Borrower shall be a waiver of any other default or breach or of any default or breach subsequently occurring. Lender shall not be deemed to have waived any right or remedy except in writing signed by an officer of Lender expressly stating that it is a waiver of such right or remedy. In addition, the Parties agree and understand that this TFA shall toll any and all applicable statute of limitations with respect to the breach of the Loan Documents and any possible action(s) thereon.

12. Cumulative Remedies. The rights and remedies of Lender under this TFA, the

Security Agreement and the Loan Documents are cumulative and not exclusive of any rights or remedies that Lender would otherwise have, and such rights and remedies may be pursued at any time and in such order as Lender may in its sole discretion determine.

13.   Subsequent Modifications in Writing.   The Parties each agrees that any subsequent attempt to modify this TFA must be in writing and signed by Lender and Borrower for such modification to be legally binding.

14.   Construction.   The Parties each agree that this TFA has been and shall be construed to have been drafted by all Parties so that the rule of construing ambiguities against the drafter of a document shall have no force or effect.

15.   Comprehension of Agreement.   The Parties each represent and warrant that they fully understand the terms of this TFA, and that they freely and voluntarily enter into and execute this TFA without undue influence by any person and without any promises, conditions, terms, statements, or representations not expressly contained in this TFA.

16.   Time is of the Essence.   Borrower agrees and understands that time is of the essence for this TFA, the Note, and the Note2.

17.   Further Performance.   Borrower, Guarantor, and Grantor, whenever and as often as shall be requested by Lender, shall execute, acknowledge, and deliver, or cause to be executed, acknowledged, and delivered such further instruments and documents and to do any and all things as may be requested by Lender.

18.   Successors and Assigns.   This TFA shall be binding upon and inure to the benefit of the Parties and to any of Lender's successors and assigns.

19.   Authority to Execute.   Each signatory to this TFA warrants and represents that he/she has authority to bind the party for whom that signatory acts.

20.   Invalidity.   If any court of competent jurisdiction determines that any provision(s) of this TFA or any of the Loan Documents is invalid, illegal, or otherwise unenforceable, that provision(s) shall be deemed severed from the rest, which shall remain in full force and effect as though the invalid, illegal, or otherwise unenforceable provision(s) had never been a part of the TFA or the Loan Documents.

21.   Multiple Copies.   The Parties each agree that this TFA may be executed in multiple

counterparts, identically worded, and that each such counterpart shall constitute a single agreement of the Parties.

22. **WAIVER OF JURY TRIAL.   OBLIGORS AND GRANTOR KNOWINGLY, VOLUNTARILY, AND IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHTS OBLIGORS AND GRANTOR MAY HAVE TO TRIAL BY JURY IN ANY LEGAL PROCEEDING BASED ON, ARISING OUT OF, OR IN ANY WAY RELATED TO: THIS TFA, THE LOAN DOCUMENTS, OR ANY OTHER AGREEMENT EXECUTED OR CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH ANY OF THE OBLIGATIONS OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.   THIS JURY WAIVER ALSO APPLIES TO ANY CLAIM, COUNTERCLAIM, CAUSE OF ACTION OR DEMAND ARISING FROM OR RELATED TO: (I) ANY COURSE OF CONDUCT, COURSE OF DEALING, OR RELATIONSHIP OF BORROWER, ANY OBLIGOR, GRANTOR, OR ANY OTHER PERSON WITH LENDER OR ANY EMPLOYEE, OFFICER, DIRECTOR OR ASSIGNEE OF LENDER IN CONNECTION WITH THE INDEBTEDNESS AND OTHER OBLIGATIONS OWED BY OBLIGORS AND GRANTOR TO LENDER; OR (II) ANY STATEMENT (WHETHER ORAL OR WRITTEN) OR ACTIONS OF ANY PERSON BY OR ON BEHALF OF LENDER TO BORROWER, ANY OBLIGOR, OR ANY OTHER PERSON IN CONNECTION WITH THE INDEBTEDNESS OWED BY OBLIGORS TO LENDER, REGARDLESS OF WHETHER SUCH CAUSE OF ACTION ARISES BY CONTRACT, TORT OR OTHERWISE.   OBLIGORS AND GRANTOR HEREBY ACKNOWLEDGE THAT THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT TO LENDER IN EXTENDING CREDIT TO THE BORROWER, THAT LENDER WOULD NOT HAVE EXTENDED SUCH FORBEARANCE WITHOUT THIS JURY TRIAL WAIVER, AND THAT OBLIGORS HAVE BEEN REPRESENTED BY AN ATTORNEY OR HAVE HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY IN CONNECTION WITH THIS JURY TRIAL WAIVER AND UNDERSTAND THE LEGAL EFFECT OF THIS WAIVER.   OBLIGORS FURTHER CERTIFY THAT NO PERSON HAS REPRESENTED TO THEM, EXPRESSLY OR OTHERWISE, THAT LENDER OR ANY OTHER PERSON WOULD NOT, IN THE EVENT OF A LEGAL PROCEEDING, SEEK TO ENFORCE THE FOREGOING WAIVER.**

23. Governing Law and Venue.   This Agreement shall be construed in accordance with and governed by the laws of the State of Texas.   Venue for any dispute relating in any way to this TFA, the Security Agreement, and/or the Loan Documents shall exclusively be in the state or

federal courts for Harris County, Texas.

IN WITNESS WHEREOF, the Parties hereby execute this Forbearance Agreement.

**Microwave Industrial Services, LLC**

By: _____

Name: _____ KEVIN SUSTALA

Title: DIRECTOR

Date: 2022-03-10

STATE OF TEXAS      §
                                §
COUNTY OF HARRIS    §

BEFORE ME, the undersigned authority, on the _____10th_____ day of March 2022, personally appeared Kevin Sustala, known to me to be the person whose name is subscribed above to the foregoing instrument, and acknowledged to me that he executed the Third Forbearance Agreement as the representative for Microwave Industrial Services, LLC for the purposes and consideration therein expressed.

_____
Notary Public, State of Texas

BABU PARSHOTTAM
Notary Public, State of Texas
Comm. Expires 03-11-2024
Notary ID 126922335

03/10/2022

Kevin Sustala

By: _____

Date: _____ 2022-03-10

STATE OF TEXAS      §
                               §
COUNTY OF HARRIS    §

       BEFORE ME, the undersigned authority, on the ___10th___ day   of   March    2022, personally appeared Kevin Sustala, known to me to be the person whose name is subscribed above to the foregoing instrument, and acknowledged to me that he executed the Third Forbearance Agreement in his capacity as a Guarantor for the purposes and consideration therein expressed.

BABU PARSHOTTAM
Notary Public, State of Texas
Comm. Expires 03-11-2024
Notary ID 126?22335

03/10/2021

_____
Notary Public, State of Texas

Vita Victor, Inc.

By: _____

Name: _____ KEVIN  SUSTALA _____

Title: DIRECTOR

Date: 2022-03-10

STATE OF TEXAS      §
                               §
COUNTY OF HARRIS    §

       BEFORE ME, the undersigned authority  on the ___10th___ day   of   March    2022, personally appeared  _KEVIN  SUSTALA_____, known to me to be the person whose name is subscribed above to the foregoing instrument, and acknowledged to me that he executed the Third Forbearance Agreement on behalf of Vita Victor, Inc. for the purposes and consideration therein expressed.

_____
Notary Public, State of Texas

BABU PARSHOTTAM
Notary Public, State of Texas
Comm. Expires 03-11-2024
Notary ID 126?22335

03/10/2022

**Hancock Whitney Bank**

By:_____

Name:_____

Title:_____

Date:_____

STATE OF ALABAMA          §
                          §
COUNTY OF MOBILE          §

      BEFORE ME, the undersigned authority  on the_____ day  of  March  2022, personally appeared _____, known to me to be the person whose name is subscribed above to the foregoing instrument, and acknowledged to me that he executed the Third Forbearance Agreement on behalf of Hancock Whitney Bank for the purposes and consideration therein expressed.

_____
Notary Public, State of Alabama